**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARD PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-22-L |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Richard Peters, seeks judicial review of a partially favorable decision by the Social Security Administration denying his application for disability insurance benefits (DIB) and sustaining the award of supplemental security income benefits (SSI) as of March 19, 1999. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

**I.  Agency Proceedings**

This case has an unusually long and complicated history. Mr. Peters filed overlapping applications for DIB and SSI benefits both before and after December 31, 1997, the date he was last insured for DIB. *See* Administrative Record (AR) 348.

Mr. Peters filed his first application for DIB and SSI on May 25, 1993. Mr. Peters alleged that he had been unable to work because of pain and stiffness in his neck, pain and

numbness in his hands and fingers, pain and tightness in his back, and alcohol abuse.[1]  AR 73-74.  Benefits were ultimately denied after an administrative hearing.  Administrative Law Judge (ALJ) Thomas E. Bennett issued an unfavorable decision on January 20, 1995.  AR 70-78.  The decision was affirmed on appeal by this Court on June 27, 2000.[2]

On March 19, 1999, while his first application was pending on appeal to this Court, Mr. Peters filed his second application for social security benefits alleging a disability onset date of January 21, 1995, the day after the date of ALJ Bennett's unfavorable administrative decision.  After a second administrative hearing, ALJ Bruce L. Evans issued an unfavorable decision on August 24, 2000.  AR 12-21.  The Appeals Council affirmed the ALJ's decision on August 18, 2002.  AR 7-9.

On July 11, 2001, while his second application was pending on appeal before the Appeals Council, Mr. Peters filed a third application for social security benefits.  After an administrative hearing, ALJ H. Maxwell Darks entered a decision on March 22, 2003, finding that Mr. Peters was impaired by a severe affective disorder which met the requirements of § 12.04 of the Listing of Impairments.  AR 372.  *See* Appendix 1 to Subpart P, 20 C.F.R. Part 404.  ALJ Darks' decision stated that Mr. Peters had been disabled since January 20, 1995, yet the ALJ found Mr. Peters' physical impairments to be mild:

---

[1]Other than the alcohol abuse, Mr. Peters did not allege that he suffered from any mental impairments.

[2]*See Peters v. Apfel*, Case No. 99-376-T (Jun. 27, 2000).

> [Mr. Peters] also has diagnoses of spinal stenosis, degenerative changes at multiple levels of the cervical spine with localized disk bulge and spurring at two levels, cervical spondylosis, degenerative joint disease of the right elbow, and Hepatitis C. However, diagnostic testing reveals these conditions are mild in severity and have no significant impact, singly or in combination, on his ability to engage in substantial gainful activity.

AR 371-372. Ultimately, ALJ Darks reopened the prior, March 19, 1999, application and awarded SSI benefits only, effective March 19, 1999, the date of Mr. Peters' second application. The decision included no explanation as to why January 21, 1995, was considered the onset date. It is clear, however, that ALJ Darks did not find Mr. Peters' physical impairments to be "severe" at any time through the date of the third administrative decision. On appeal, this Court granted the Commissioner's unopposed motion to remand the case to an ALJ. This Court granted the Commissioner's motion, and the case was remanded to a fourth ALJ, Kim Daniel Parrish, with instructions to reconcile the unfavorable August 24, 2000, administrative decision with the fully favorable March 22, 2003, administrative decision. The ALJ was specifically instructed to consider reopening Mr. Peter's March 19, 1999, application for DIB. AR 374-379. To award DIB benefits, however, the ALJ would have to find Mr. Peters disabled before December 31, 1997, the last date he was insured for DIB benefits.

ALJ Parrish held a remand hearing, and thereafter issued a partially favorable decision on April 26, 2004. AR 380-390. The ALJ reopened the March 19, 1999, DIB application, but determined that before March 19, 1999, Mr. Peters retained the residual functional capacity (RFC) to perform a wide range of light work. AR 387.

On May 16, 2006, the Appeals Council remanded the case, finding that the April 26, 2004, decision did not contain an adequate rationale for concluding that the claimant was not disabled prior to March 19, 1999. AR 391-395. The Appeals Council stated that ALJ Parrish had failed to adequately explain why he had not adopted the finding that Mr. Peters was disabled as of January 21, 1995. AR 393. Further, the Appeals Council directed the ALJ to hold another remand hearing, to obtain evidence from a medical expert, if needed, to clarify the date of disability onset, and to consider whether the expanded record warranted reopening the March 19, 1999, application for Title II (DIB) benefits. ALJ Parrish held the remand hearing as instructed and enlisted the help of two medical experts, one to testify about Mr. Peters' physical impairments and another to testify about Mr. Peters' mental impairment. AR 581-620. Thereafter, ALJ Parrish issued the decision on appeal before this Court, finding that Mr. Peters was disabled as of March 19, 1999, but not before. AR 344-353. The Appeals Council affirmed the ALJ's decision.

**II.   The ALJ's Decision**

The general issue before the ALJ was whether Mr. Peters was disabled prior to March 19, 1999. For purposes of determining whether Mr. Peters was entitled to payments for DIB, the relevant period is after January 20, 1995, the date of ALJ Bennett's unfavorable decision, and before December 31, 1997, the date Mr. Peters was last insured for DIB. The ALJ examined the medical evidence and considered the testimony of the two medical experts who testified at the final remand hearing. Following the sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520;

4

416.920, the ALJ determined that Mr. Peters had not engaged in substantial gainful activity between January 20, 1995, and March 19, 1999. AR 350. At step two, the ALJ determined that Mr. Peters did not have a severe impairment or combination of impairments during the period under review. *Id.* Accordingly, the ALJ found that Mr. Peters was not disabled prior to March 19, 1999. AR 353.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Analysis

The ALJ completed the steps outlined in the Appeals Council's remand order. The ALJ specifically stated that he had considered medical records for the period prior to January 20, 1995, as well as medical records for the period after March 19, 1999, for longitudinal purposes and to gain insight into Mr. Peters' complete medical history. AR 351-352.[3] In determining whether Mr. Peters' physical limitations caused him to be disabled before his last date insured for DIB, the ALJ properly focused on medical records dated between January 20, 1995, and December 31, 1997. The ALJ also considered medical records through March 19, 1999, to determine whether Mr. Peters was entitled to SSI benefits before the date such benefits were awarded. AR 351-352.

The ALJ concluded that the medical records detailing treatment for physical impairments before December 31, 1997, do not support a finding of disability. The ALJ's decision that Mr. Peters was not disabled before March 19, 1999, is supported by substantial evidence in the record.

---

[3] Mr. Peters contends that the ALJ failed to consider reports of Dr. Loy, dated February 19, 1993, and Dr. Harper, dated December 14, 1995. *See* Plaintiff's Brief at 13. Dr. Loy's report is dated before the relevant period. Dr. Harper's report is dated after the alleged onset date. Dr. Harper opined that Mr. Peters had a 72% permanent partial disability to the body as a whole as a result of multiple injuries sustained at different times. AR 438. Dr. Harper's assessment does not include a description of functional limitations and is not, therefore, helpful in determining whether Mr. Peters had limitations that would preclude his engaging in any substantial gainful activity. ALJ Parrish did not specifically discuss these records, but he did state that he had considered all medical records both before and after the relevant period. AR 351-352. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 -1010 (10th Cir. 1996).

On September 12, 1997, Mr. Peters underwent an MRI of the cervical spine. The MRI showed cervical spondylosis with marked, spinal stenosis at C5-6. A left parasagittal intervertebral disc bulge resulted in mild encroachment on the left neural foramina at C5-6. At C6-7, the study revealed an annular disc bulge. AR 203. Flexion and extension views showed no evidence of spinal instability, fracture or dislocation. Endplate degenerative changes resulted in only mild disc space narrowing from C3 through C7 consistent with degenerative disc disease. AR 203-205.

On November 19, 1997, Mr. Peters underwent nerve conduction studies to rule out carpal tunnel syndrome as a cause for numbness in his hands and fingers. Dr. Farhat Husain concluded that the study was normal with no electrophysiologic evidence of median or ulnar neuropathy on either side and no EMG evidence of cervical radiculopathy on the left, more symptomatic side. AR 199-200.

On July 16, 1998, a progress note by Dr. Paul A. Kammerlocher diagnosed cubital tunnel syndrome on the right. Mr. Peters was advised to continue taking non-steroids and was prescribed a padded elbow sleeve to be worn continuously. AR 193-194. X-rays taken on September 17, 1998, revealed only mild degenerative joint changes in the right elbow with very mild loss of extension. AR 187.

On October 28, 1998, Dr. Timothy A. Puckett stated that the decreased range of motion in Mr. Peters' elbow "was not sufficient to restrict his activities of daily living." AR 184. Dr. Puckett also stated that Mr. Peters' subjective complaints of pain were not severe enough to warrant a surgical fusion of the elbow. *Id.*

7

On November 16, 1998, Dr. Badie S. Mansour examined Mr. Peters and found decreased sensation to pinprick on the left little finger and thumb, good range of motion of shoulder, but limited neck movement to the left side and increased pain with movement of his neck from side to side. Dr. Mansour treated Mr. Peters with trigger point injections. AR 183. Mr. Peters returned to Dr. Mansour on November 18, 1998, complaining of neck swelling and rash. Upon examination, Dr. Mansour found neither. Mr. Peters reported that the trigger point block had not relieved his pain. AR 182.

The ALJ elicited testimony from two medical experts. Dr. Billy Stout[4] reviewed the medical evidence relating to Mr. Peters' physical complaints. He testified that nothing in the medical record indicated that Mr. Peters was severely impaired before March 19, 1999. AR 586; 352.

Dr. Dian Bower testified as to Mr. Peters' mental impairments. Having reviewed the medical records, Dr. Bower testified that she was unable to identify any record of mental health complaints prior to March 19, 1999. AR 606-607. The ALJ noted that this finding was consistent with Mr. Peters' admission that he had had no mental health treatment before that date. AR 352.

In support of his claim for an earlier disability onset date and award of DIB benefits, Mr. Peters relies primarily on two documents: a Physical Residual Functional Capacity

---

[4] The transcript of the final administrative hearing identifies this doctor as "Dr. Billy H. Stoud." AR 581.

Questionnaire completed by Dr. Fasil Latif, a treating physician, *see* AR 333-337, and an opinion from another treating physician, Dr. Marc E. Lenerts. AR 340.

On the RFC questionnaire, Dr. Latif states that the earliest date of the symptoms and limitations was January 20, 1995. According to Mr. Peters, the questionnaire was completed by Dr. Latif on May 12, 1995. *See* Plaintiff's Brief at 13. Mr. Peters is mistaken. The questionnaire is dated May 12, 2005. AR 337. Dr. Latif states that he had been treating Mr. Peters for only three years. Moreover, in a letter to Mr. Peters' attorney, Dr. Latif states, "The basis for my saying as to when the patient's symptoms started is mainly history provided by the patient." AR 480. Dr. Latif began treating Mr. Peters after the expiration of his insured status for DIB and after he had been found disabled based on mental limitations.

The letter from Dr. Lenerts states only that Mr. Peters has "severe polyneuropathy and cervical myelopathy making him unable to work, lift, walk more than a few steps, stand for a few minutes." AR 340. Mr. Peters states that the letter was dated July 25, 1997. *See* Plaintiff's Brief at 13. Again, Mr. Peters is mistaken. The letter is dated July 25, 2007, as evidenced by the letter itself and a subsequent letter to Dr. Lenerts from Mr. Peters' attorney referencing Dr. Lenerts' letter of July 25, 2007. AR 340; 338. Dr. Lenerts' contention that Mr. Peters had been disabled since 1996 is not supported by the contemporaneous medical records. Moreover, Dr. Lenerts was not treating Mr. Peters during the period at issue.[5]

---

[5]The ALJ did not specifically mention Dr. Lenerts' opinion. He did, however, state that he had reviewed all medical evidence subsequent to March 19, 1999. Moreover, the Tenth Circuit has held that "[w]hile a treating physician may provide a retrospective diagnosis of a claimant's condition, a retrospective diagnosis without evidence of actual disability is insufficient." *Coleman*
(continued...)

9

In sum, Plaintiff has shown no basis for reversal of the Commissioner's August 2, 2007 decision.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by December __20th__, 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __29th__ day of November, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE

---

$^5$(...continued)
*v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(quotation omitted). The ALJ's failure to specifically reference Dr. Lenerts' opinion does not require reversal.